# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO.: 1:25-cv-25908

SUNHONEY LLC,

          Plaintiff,

v.

SHEIN DISTRIBUTION CORPORATION, a
Delaware Corporation,  SHEIN US
SERVICES, LLC, a Delaware Limited
Company, and  ROADGET BUSINESS PTE.
LTD., a Singapore Limited Company,

          Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, SUNHONEY LLC., by and through its undersigned counsel, brings this complaint against Defendants, SHEIN DISTRIBUTION CORPORATION, SHEIN US SERVICES, LLC, and  ROADGET BUSINESS PTE. LTD., (collectively "Shein" or "Defendants"), who are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiff's intellectual property within this district through various Shein platforms, and in support of its claims, alleges as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff, SUNHONEY LLC ("Sunhoney") brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida common law.

2.      Plaintiff, Sunhoney brings this action for willful copyright infringement, removal of copyright management information and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §§501 and 1202, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, et seq. 17 U.S.C. §§ 504 and 1203.

## SUBJECT MATTER JURISDICTION

3.      This court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      This court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 17 U.S.C. § 301.

5.      This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION AND VENUE

6.      Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Florida and this district, through the URL www.us.shein.com ("Website") and Shein's mobile online platform ("Shein App").

7.      Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Florida cause Plaintiff injury in Florida, and Plaintiff's claims arise out of those activities.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) because the events giving rise to the claims occurred in this district, Shein engaged in infringement in this district, and Shein is subject to personal jurisdiction in this district.

## THE PLAINTIFF

9.      Plaintiff SUNHONEY LLC is a limited liability corporation incorporated in Jacksonville Beach, Florida.

10.     Plaintiff Sunhoney is the exclusive licensee of all rights in and to the trademarks and copyright described below that are the subject of this action.

11.     In 2019, Alyssa Amato started Sunhoney as an online only boutique store, specializing in boho and beach inspired fashion. In 2021, Sunhoney began producing branded products, t-shirts, tote bags, hats and more that quickly gained popularity. In 2023, Sunhoney opened its first storefront in Jacksonville Beach, FL. The Sunhoney branded tees have become one of the most popular items that are sold to girls all over the United States and Canada.

12.     Sunhoney's products are sold through https://shopsunhoney.com/, at the Sunhoney Storefront, and other authorized retailers.

13.     Plaintiff offers for sale and sells its products within the state of Florida, including this district, and throughout the United States and Canada.

14.     Like many other intellectual property rights owners and exclusive licensees, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

15.     Plaintiff is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

16.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

17.     The recent explosion of infringement over the Internet has created an environment that requires companies like Plaintiff to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's licensed intellectual property rights, including consumer confusion and the erosion of Plaintiff's brand.

## **PLAINTIFF'S TRADEMARK RIGHTS**

18.     Plaintiff is an exclusive licensee and official source of SUNHONEY branded products in the United States and Canada.

19.     Plaintiff's products are sold under the federally registered trademark Sunhoney (the "SUNHONEY Mark").

20.     Alyssa Amato registered the SUNHONEY Mark with the Principal Register of the United States Patent and Trademark Office on January 26, 2021, as shown below.  A true and correct copy of the registration certificate is attached hereto as **Exhibit 1**. Plaintiff became the exclusive licensee in the U.S. of all rights in and to the SUNHONEY Mark via written agreement on July 4, 2025. A true and correct copy of the Trademark Assignment is attached hereto as **Exhibit 2**.

| **Mark** | **U.S. Reg. No.** | **IC** | **First Use/ First Use in Commerce** | **Registration Date** |
|---|---|---|---|---|
| *Sunhoney* | 6,246,750 | 25 | 12.21.2018/12.21.2018 | Jan. 26, 2021 |

21.    The SUNHONEY Mark is valid and registered in International Class 25 for "Women's clothing, namely, shirts, dresses, skirts, blouses" on the Principal Register of the United States Patent and Trademark Office as shown in Exhibit 1. The mark consists of the word "Sunhoney" in a pink stylized cursive font.

22.    The SUNHONEY Mark is used in connection with the manufacture and distribution of Plaintiff's high-quality clothing products.

23.    The SUNHONEY Mark is displayed on various clothing products, tote bags, hats, etc. Shown below are examples of the SUNHONEY Mark as used on products Plaintiff offers.



24.    The SUNHONEY Mark has been continuously used in interstate commerce to identify and distinguish Plaintiff's high-quality products for an extended period of time.

25.     The SUNHONEY Mark has been used by Plaintiff for a long time prior to Defendants' use of copies of the trademark.

26.     Plaintiff is the licensee of all rights in and to the SUNHONEY Mark, including the exclusive right to pursue acts of infringement and retain and recover all proceeds thereof.

27.     The SUNHONEY Mark has never been assigned or licensed to Defendants.

28.     The SUNHONEY Mark is a symbol of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

29.     Plaintiff has carefully monitored and policed the use of the SUNHONEY Mark.

30.     The SUNHONEY Mark is well known and famous (as that term is used in 15 U.S.C. §1125(c)(1)) and has been for many years.

31.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the SUNHONEY Mark and the products bearing or using those Marks.

32.     Plaintiff has extensively used, advertised, and promoted the SUNHONEY Mark in the United States in association with the sale of its high-quality products.

33.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the SUNHONEY Mark as being high-quality and approved by Plaintiff.

34.     Accordingly, the SUNHONEY Mark has achieved secondary meaning as identifiers of high-quality and unique clothing and other products.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

35.     Genuine products bearing or sold under the SUNHONEY Mark are widely and legitimately advertised and promoted by Plaintiff.

36.     Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

37.     Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

38.     Plaintiff's SEO strategies allow Plaintiff to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the SUNHONEY Mark.

**PLAINTIFF'S COPYRIGHT RIGHTS**

39.     Alyssa Amato is the designer and creator of the Sunhoney t-shirt designs that have become essential to Plaintiff's brand and business. One of Plaintiff's most popular designs, titled "What's The Best Sunhoney" is shown below:

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK



40.    Plaintiff registered this design with the U.S. Copyright Office as a group of photographs. The Copyright is listed in the table below (hereinafter referred to as the "Copyrighted Work"). A true and correct copy of the certificate of registration and the images it applies to are attached hereto as **Exhibit 3**.

| **Copyright Title and Description** | **Reg. No.** | **Reg. Date** |
|---|---|---|
| What's The Best Sunhoney Design (Group of 7 Photos) | VA 2-468-440 | 9/11/2025 |

41.    Plaintiff Sunhoney owns all exclusive rights to the copyright at issue in this action.

42.    At all relevant times Plaintiff is the owner of all rights in and to the Copyrighted Works, including the exclusive right to pursue acts of infringement and retain and recover all proceeds thereof, at issue in this case.

43.     The Copyrighted Work are protected by copyright but are not otherwise confidential, proprietary, or trade secret.

**DEFENDANTS**

44.     Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

45.     Defendant Shein Distribution Corporation ("SDC") is a Delaware corporation that conducts business in the State of New York. SDC "[h]eadquartered in Singapore" and has a principal place of business at 12 Marina Boulevard, #15-01, Marina Bay Financial Centre Singapore (018982). SDC can be served through Paracorp Incorporated, SDC's registered agent, at 2140 S. Dupont Highway, Camden, Delaware 19934.

46.     Defendant Shein US Services, LLC ("SUS") is a Delaware limited liability company that conducts business in the State of New York. SUS is "[h]eadquartered in Singapore" and has a principal place of business at 12 Marina Boulevard, #15-01, Marina Bay Financial Centre Singapore (018982). SUS can be served through Paracorp Incorporated, SUS's registered agent, at 2140 S. Dupont Highway, Camden, Delaware 19934.

47.     Defendant Roadget Business Pte. Ltd. ("Roadget") is a Singapore limited company that conducts business in the State of New York. Roadget has a headquarter and principal place of business at 12 Marina Boulevard, #15-01, Marina Bay Financial Centre Singapore (018982).

48.     Defendants SDC, SUS, and Roadget work together as "Shein" and do business in the State of Florida, including within this district.

49.     Defendants have registered, established or purchased, and maintained the Website and Shein App.

50.     Defendants target their business activities toward consumers throughout the United States, including within this district, through their operations via the Website and Shein App.

51.     Defendants are the past and present controlling forces behind the sale of products bearing or using counterfeits and infringements of Plaintiff's licensed intellectual property rights as described herein operating and using at least the Website and Shein App.

52.     Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing or using counterfeits and infringements of Plaintiff's licensed intellectual property rights to consumers within the United States and this district through their Website and Shein App.

53.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

54.     Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Florida and causing Plaintiff harm and damage within this jurisdiction.

55.     The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

56.     At all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

<u><strong>DEFENDANTS' INFRINGING ACTIVITIES</strong></u>

57.

58.     Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's products in interstate commerce that are counterfeits and infringements of Plaintiff's intellectual property rights (the "Counterfeit Goods") through their Website and Shein App. A comparison of Plaintiff's genuine products and Shein's infringing products are shown below:

| <u>**Plaintiff's Genuine Product**</u> | <u>**Defendant's Infringing Product**</u> |
|---|---|
|  |  |

59.     Defendants are using identical or similar marks to the SUNHONEY Mark, or identical or substantially similar copies of the Copyrighted Work for different quality goods.

60.     Plaintiff has used the SUNHONEY Mark extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

61.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods.

62.     Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of Counterfeit Goods with the knowledge and intent that such products will be mistaken for the genuine high-quality products offered for sale by Plaintiff, despite Defendants' knowledge that they are without authority to use the SUNHONEY Mark.

63.     The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all Defendants' products offered for sale on Defendants' e-commerce stores are genuine products originating from, associated with, and approved by Plaintiff.

64.     Defendants advertise their Website and Shein App, including their Counterfeit Goods offered for sale, to the consuming public.

65.     In so advertising their Website and Shein App, Defendants improperly and unlawfully use the SUNHONEY Mark and/or Copyrighted Works without Plaintiff's permission or authority as evidenced by the documents attached hereto as **Exhibit 4.**

66.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar,

advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the SUNHONEY Mark.

67.    Specifically, Defendants are using counterfeits and infringements of the SUNHONEY Mark or Copyrighted Works in order to make their Website and Shein App selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

68.    By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

69.    Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the SUNHONEY Mark, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

70.    Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

71.    As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

72.     At all times relevant hereto, Defendants in this action had actual or constructive knowledge of Plaintiff's licensed trademark and Copyright Works, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

73.     Defendants' use of the SUNHONEY Mark, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

74.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's licensed trademark and Copyrighted Works for the purpose of trading on Plaintiff's goodwill and reputation.

75.     If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

76.     Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

77.     Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

78.     Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and its wrongful use of Plaintiff's licensed trademark and Copyrighted Work.

79. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

80. Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

81. Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's licensed trademark or Copyrighted Work.

82. Plaintiff has no adequate remedy at law.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

83. Plaintiff incorporates the allegations of paragraphs 1 through 81 of this Complaint as if fully set forth herein.

84. This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the SUNHONEY Mark in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

85. Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the SUNHONEY Mark.

86. Defendants are continuously infringing and inducing others to infringe the SUNHONEY Mark by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

87.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

88.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

89.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the SUNHONEY Mark in violation of Defendants' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

90.     Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

91.     If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A))**

92.     Plaintiff incorporates the allegations of paragraphs 1 through 81 of this Complaint as if fully set forth herein.

93.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of the SUNHONEY Mark have been widely advertised and offered for sale throughout the United States, including within this district.

94.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of the SUNHONEY Mark are virtually identical in appearance to Plaintiff's genuine goods.

95.     Defendants' Counterfeit Goods are different in quality from Plaintiff's goods and are of much lower quality.

96.     Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

97.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

98.     Defendants have authorized infringing uses of the SUNHONEY Mark in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

99.     Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

100.    Defendants are using counterfeits and infringements of the SUNHONEY Mark in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

101.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

102.     Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

103.     Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III – COMMON LAW TRADEMARK INFRINGEMENT

104.     Plaintiff incorporates the allegations of paragraphs 1 through 81 of this Complaint as if fully set forth herein.

105.     Plaintiff is the exclusive licensee of all common law rights in and to the SUNHONEY Mark.

106.     Plaintiff was the first to use the SUNHONEY Mark.

107.     Plaintiff has used the SUNHONEY Mark since December 21, 2018.

108.     As a result of Plaintiff's widespread and continuous use in commerce, including its promotion and sales of products bearing Plaintiff's SUNHONEY Mark, the SUNHONEY Mark has become widely known.

109.     Defendants are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the SUNHONEY Mark.

110.     Defendants' infringing activities are likely to cause and, are actually causing, confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing or using the SUNHONEY Mark.

111.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

112.     Absent an entry of an injunction by this Court, Defendants will continue to damage Plaintiff and wrongfully reap profits. Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT IV – COMMON LAW UNFAIR COMPETITION

113.     Plaintiff incorporates the allegations of paragraphs 1 through 81 of this Complaint as if fully set forth herein.

114.     Defendants' activities complained of herein constitute unfair methods of competition.

115.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods using or bearing counterfeits and infringements of the SUNHONEY Mark.

116.     Defendants are also using counterfeits and infringements of the SUNHONEY Mark to unfairly compete with Plaintiff and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

117.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Website and Shein App and all products sold therein by their use of the SUNHONEY Mark.

118.     Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT V – COPYRIGHT INFRINGEMENT AGAINST DEFENDANTS FOR SALES IN THE U.S.

119.    Plaintiff incorporates the allegations of paragraphs 1 through 81 of this Complaint as if fully set forth herein.

120.    Plaintiff is the owner of the Copyrighted Work at issue in this case.

121.    Defendants copied, displayed, and distributed products with the Copyrighted Work at issue in this case and made derivatives of the Copyrighted Work without Plaintiff's authorization in violation of 17 U.S.C. § 501.

122.    Defendants performed the acts alleged in the course and scope of its business activities.

123.    On information and belief, Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

124.    Defendants' acts were willful.

125.    Plaintiff has been damaged.

126.    The harm caused is irreparable.

## COUNT VI – COPYRIGHT INFRINGEMENT AGAINST DEFENDANTS FOR SALES OUTSIDE THE U.S.

127.    Plaintiff incorporates the allegations of paragraphs 1 through 81 of this Complaint as if fully set forth herein.

128.    Plaintiff owns valid copyrights in the Copyrighted Work.

129.    Sunhoney registered the Works with the Register of Copyrights pursuant to 17 U.S.C. § 411(a).

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

130.    Defendants copied, displayed, and distributed the Work and made derivatives of the Work without Sunhoney's authorization in violation of 17 U.S.C. § 501 when Defendants uploaded images of the Work and/or stored images of the Work on U.S. servers hosting Defendant's Content Delivery Network ("CDN").

131.    CDN is a network of geographically distributed servers that work together to deliver web content more efficiently to users by caching content like images on servers distributed across the globe, directing users to the nearest server, improving web performance and enhancing web security.

132.    The CDN that Defendants use utilizes servers in the United States to store and distribute images of their products. The images of the infringing products that use Sunhoney's Work were uploaded to and/or stored on servers located in the U.S. and then distributed from those U.S. servers to consumers.

133.    Defendants use the CDN service to display the infringing images on their webpages in order to sell the infringing products that use Sunhoney's Work.

134.    The images of the infringing products using the Work led to transactions with foreign customers. Defendants own and operate various domain names and webpages to engage in the sale, marketing, advertising, manufacturing, importation, and/or distribution of products online outside the United States.

135.    Defendants uploaded infringing images of the Work to U.S. servers operating the CDN for display on Defendant's webpages and domains to sell products around the world.

136.    Defendants uploaded, selected, and used the images on U.S. servers operating the CDN to facilitate the sale of infringing products bearing the Work around the world.

137.    Defendants affirmatively uploaded the protected images to their U.S. servers and, as a result, the predicate acts of infringement took place in the United States.

138.    The conduct relevant to the infringing acts by Defendants occurred in U.S. territory.

139.    Sunhoney is entitled to enforce the exclusivity guaranteed to it under Section 106 of the Copyright Act with respect to Defendant's predicate acts of infringement in the U.S. even if those acts resulted in sales of infringing products outside the U.S.

140.    Sunhoney asserts infringing use by Defendants of Sunhoney's protected works in the U.S. that consequently led to sales outside of the country.

141.    Defendants' acts were willful.

142.    Sunhoney has been damaged.

143.    The harm caused to Sunhoney has been irreparable.

## COUNT VII – REMOVAL OR FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION

144.    Plaintiff incorporates the allegations of paragraphs 1 through 81 of this Complaint as if fully set forth herein.

145.    Plaintiff's Work contains copyright management information ("CMI") as defined by 17 U.S.C. § 1202 including the name of the company "Sunhoney" which is identifying information for the Works and for Plaintiff.

146.    Defendants knowingly and with the intent to enable, conceal, or facilitate copyright infringement, removed from and failed to display the CMI in the Works in violation of 17 U.S.C. § 1202(b). As seen below:

**Plaintiff's Copyrighted Work**     **Defendants' Infringing Product**



147.   Defendants caused, directed and authorized others commit these acts knowing or having reasonable grounds to know that it would induce, enable, facilitate or conceal infringement of Sunhoney's rights in the Work.

148.   Sunhoney has been damaged.

149.   The harm caused to Sunhoney has been irreparable.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.   Entry of preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. §§ 501 and 1202 and Federal Rule of Civil Procedure 65

enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the SUNHONEY Mark; from using the SUNHONEY Mark, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing itself as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the SUNHONEY Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable

**SRIPLAW**
C ALIFORNIA ◆ G EORGIA ◆ F LORIDA ◆ I NDIANA ◆ T ENNESSEE ◆ N EW Y ORK

imitations of Plaintiff's name or trademark and from otherwise unfairly competing with Plaintiff; from copying, displaying, distributing or creating derivative works of Plaintiff's Copyrighted Work.

b.  Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C.§ 1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

c.  Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b), of Plaintiff's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

d.  A determination that Defendants' infringement has been willful, wanton, and deliberate and that the damages against it be increased up to treble on this basis or for any other basis in accordance with the law;

e.  Entry of an award of awarded pre- and post-judgment interest; and

f.  Entry of an Order for any such other and further relief as the Court deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: December 16, 2025

Respectfully submitted,

*/s/ Rachel I. Kaminetzky*
RACHEL I. KAMINETZKY
Florida Bar Number: 1059614
Rachel.kaminetzky@sriplaw.com
JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Sunhoney LLC*